UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| HAGGEN, INC., a Washington corporation, | NO: CV-10-346-RMP |
|---|---|
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| WENATCHEE PROPERTIES, LLC, et al., | |
| Defendant. | |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment, ECF No. 24. The Plaintiff, Haggen, Inc. ("Haggen"), is a company that operates a TOP Foods grocery store in Wenatchee, as well as in other locations. Haggen is the lessee in a commercial lease agreement, and Haggen is suing for a declaratory judgment terminating the lease agreement between Haggen and the lessor Defendants Wenatchee Properties, LLC, Chula Vista Wenatchee, LLC, Glaser Wenatchee, LLC, and Wartnik Wenatchee, LLC (the "Lessor Defendants").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

This summary judgment motion concerns all of the remaining parties in this case as Haggen already secured a default judgment against the other Defendant, Citigroup Global Markets Realty Corp. *See* ECF No. 42.

Haggen argues that the condemnation provision of the termination clause in its lease agreement allows Haggen to terminate the lease because WSDOT has condemned over 25% of the leased premises. The Lessor Defendants agree that a WSDOT project is resulting in a taking through eminent domain of more than 25% of the leased premises, but argue that Plaintiff should not be allowed to terminate the lease because the taking is of an unused portion of the premises. In addition, the Lessor Defendants argue that the taking does not encompass more than 10% of a building on the premises, and that Haggen has enjoyed and may continue to enjoy the "benefit of the bargain" it struck with the Lessor Defendants in agreeing to the lease.

## FACTUAL BACKGROUND

A summary of the key, undisputed facts of this case is as follows: The Lessor Defendants are successors in interest to Carr-Gottstein Properties ("Carr-Gottstein"). ECF No. 12. Briar Development Company ("Briar"), a company operated by Donald and Richard Haggen, purchased commercial property at 10 Grant Road, East Wenatchee, Washington (the "Premises") at some point prior to 1994 and constructed and operated a TOP Foods grocery store there.

1    In 1994, Haggen and Briar executed a "Purchase and Sale Agreement" with

2  Carr-Gottstein. The agreement, a "Sale-Lease Back" agreement, sold the Premises

3  from Briar to Carr-Gottstein and leased it back to Haggen, also operated by Donald

4  and Richard Haggen. ECF No. 27 at 25. The parties then executed a lease

5  agreement and, later, the most recent lease agreement that is at the center of this

6  litigation, the "Amended and Restated Wenatchee Lease Agreement" ("Amended

7  Lease Agreement").

8    The Amended Lease Agreement contains the following provision regarding

9  termination of the lease:

10 **16.1  Right to Terminate**

11 If the Premises or any portion thereof are taken under the power of eminent domain, or sold under the threat of the exercise of said power
12 (all of which are herein the condemning authority takes title or possession, whichever first occurs. If more than 10 percent of the
13 floor area on the ground floor of the Building, or more than 25 percent of the land area of the Premises that is not occupied by any building,
14 is taken by condemnation, Lessee may, at Lessee's option, to be exercised in writing only within 60 days after Lessor shall have given
15 Lessee written notice of such taking (or in the absence of such notice, within 60 days after the condemning authority shall have taken
16 possession) terminate this Lease as of the date the condemning authority takes such possession. If Lessee does not terminate this
17 Lease in accordance with the Premises remaining, except that the rent shall be reduced in the proportion that the floor area of the Building
18 taken bears to the total floor area of the Building.

19 ECF No. 28-1 at 266.

20

1   The term "Premises" is defined earlier in the lease as the real property
2   consisting of approximately 9.2 acres located at 10 Grant Road, E. Wenatchee,
3   Washington, along with all improvements, easements, rights, and appurtenances
4   attached to the real property. ECF No. 28 at 239-40.

5   The parties agree that the Amended Lease Agreement is still in effect. At
6   some point in time, Carr-Gottstein also purchased and leased back land to Haggen
7   for operation of a TOP Foods in Olympia, Washington, and in Yakima,
8   Washington, which the Lessor Defendants argue is relevant to this case.

9   The Washington State Department of Transportation (WSDOT) is carrying
10  out a highway expansion project that requires a taking of approximately 3.25 acres
11  of the Premises. This represents more than 25% of the land area of the Premises
12  but does not encompass any area occupied by a building. Haggen received notice
13  of the condemnation from WSDOT on February 2, 2010.

14  On March 25, 2010, within 60 days of receipt of the WSDOT notice,
15  Haggen notified the Lessor Defendants of its decision to exercise the option to
16  terminate the lease pursuant to Paragraph 16.1 of the Amended Lease Agreement
17  (hereinafter, the "termination clause"). The Lessor Defendants disputed Haggen's
18  right to terminate the lease agreement, and, in April 2010, Haggen and the Lessor
19  Defendants agreed to maintain the status quo while the parties addressed the
20  dispute.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

After the parties were unable to reach an agreement, Haggen filed suit on October 6, 2010, for a declaratory judgment terminating the lease. ECF No. 1.

## ANALYSIS

This Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and, therefore, applies Washington State substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . . " *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then

shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed.R.Civ.P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

<u>Law Governing the Present Matter</u>

Under Washington law, a court interpreting a contract gives the language of the contract its ordinary, usual, and popular meaning. *Hearst Commc'ns, Inc. v. Seattle Times, Co.*, 154 Wn.2d 493, 504 (Wash. 2005). The court interprets a contract according to the contracting parties' intent, primarily as evidenced by "the objective manifestations of agreement." *State v. R.J. Reynolds Tobacco Co.*, 151

Wn.App. 775, 211 P.3d 448, 451-52 (Wash. App. Div. 1, 2009).  A court may look to the circumstances surrounding formation of the contract and other extrinsic evidence for indications of the parties' intent.  *Berg v. Hudesman*, 115 Wn.2d 657, 667-68 (Wash. 1990).  Interpretation of a contract provision is usually a question of fact.  *Martinez v. Kitsap Pub. Servs., Inc.*, 94 Wn.App. 935, 943 (Wash. App. Div. 2, 1999).  Contract interpretation involves "'a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence.'" *Martinez*, 94 Wn.App. at 943 (*quoting Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)).

      Although extrinsic evidence may be relevant in ascertaining the parties' intent, it is only relevant to the extent that evidence of the context in which the contract was formed elucidates the meaning of words used in the contract.  *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695 (Wash. 1999); *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 189 (Wash. 1992).  Extrinsic evidence is not admissible: (1) to show a party's unilateral or subjective intent as to the meaning of a contract's word or term; (2) to show an intention independent of the instrument; or (3) to delete or contradict the contract's written terms.  *In re Marriage of Schweitzer*, 132 Wn.2d 318, 326-27 (Wash. 1997).

The context rule adopted in *Berg* does not negate the principle that courts applying Washington law must focus "on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (Wash. 2005). Courts "do not interpret what was intended to be written but what was written." *Hearst Communications Inc.*, 154 Wn.2d at 504.

The Lessor Defendants do not dispute that the Amended Lease Agreement is a valid and binding contract that began to bind the Lessor Defendants when they executed an Assignment of Leases upon becoming successors in interest to Carr-Gottstein. The Lessor Defendants also concede that there is no obvious or even latent ambiguity in terms in the termination clause. Nonetheless, the Lessor Defendants argue that the Court should look to extrinsic evidence to interpret the language of the termination clause.

The Lessor Defendants urge the Court to consider evidence that the parties did not discuss or negotiate the condemnation provision in the termination clause and conclude that the condemnation provision in the termination clause is mere "boilerplate language that does not accurately express the objectives of the parties." ECF No. 33 at 12. The Lessor Defendants also argue that Haggen has enjoyed the "benefit of the bargain" struck by the parties to the Amended Lease Agreement and may continue to enjoy the benefit of the bargain despite the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

condemnation because only unused portions of the property are affected by the condemnation.

The Court rejects the Lessor Defendants' argument that examination of extrinsic evidence is appropriate regarding whether the condemnation provision of the termination clause was discussed or is boilerplate, because the purpose of the proffered extrinsic evidence is to negate or contradict one of the contract's express and unambiguous terms. *See In re Marriage of Schweitzer*, 132 Wn.2d at 327.

Moreover, even if the Court were to consider extrinsic evidence on this issue, the Lessor Defendants have offered no evidence that the termination clause was not part of the benefit of the bargain. The Lessor Defendants provide a supplemental declaration by Robert Mintz, General Manager for Carr-Gottstein, that states simply that Mr. Mintz believes that most of the lease language was provided by Haggen's attorney at the time that the lease was initially drafted and that he does "not recall" specific conversations about the termination clause, about the topography of the land at issue in the Wenatchee lease, "or the existence of any unused or unusable areas on any of the three Top Foods Properties." ECF No. 34 at 22-23. Nothing in either of Mr. Mintz's declarations supports the Lessor Defendants' position that the condemnation language in the termination clause was not discussed or was boilerplate.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

1  The Lessor Defendants also urge the Court to consider a "Diary of Right of
2  Way Activities" that records activities and negotiations leading up to the WSDOT
3  condemnation of a portion of the property leased to Haggen.  ECF No. 33-3.  The
4  Lessor Defendants argue that the log demonstrates that Haggen's likely motivation
5  for terminating the lease "revolve[s] around the potential traffic impact of the
6  taking on the TOP Foods store" rather than the taking of more than 25% of the
7  land, which Defendants emphasize is "unused."  The Lessor Defendants want the
8  Court to conclude from the diary that Haggen wants to terminate the lease for a
9  reason other than the condemnation of 25% of the property and that, therefore,
10 Haggen is before the Court with unclean hands.

11 Under the unclean hands doctrine, a court sitting in equity will not intervene
12 on behalf of a party whose conduct has not been conscientious, just, or is marked
13 by lack of good faith.  *King County v. Taxpayers of King County*, 133 Wn.2d 584,
14 644, 949 P.2d 1260 (1997).  The unclean hands doctrine only precludes a party
15 from obtaining equitable relief if the party has committed willful misconduct that
16 has an immediate and necessary relation to the requested relief.  *J.L. Cooper & Co.*
17 *v. Anchor Sec. Co.*, 9 Wn.2d 45, 73, 113 P.2d 845 (1941).

18 The Lessor Defendants have not offered any facts indicating that Haggen has
19 not been conscientious, just, or has behaved in a manner marked by lack of good
20 faith.  Similarly, the Lessor Defendants have not offered any facts supporting that

Haggen's effort to secure a declaratory judgment terminating the lease is marked by willful misconduct. The Court, therefore, declines to bar relief to the Plaintiff on the basis of the unclean hands doctrine.

In short, the conditions required by the Amended Lease Agreement to trigger Haggen's right to terminate upon condemnation have been satisfied. First, more than 25 percent of the land area of the Premises that is not occupied by any building was taken by condemnation. Second, Haggen gave written notice to the Lessor Defendants of Haggen's exercise of the option to terminate the lease within 60 days after receiving written notice of the taking. *See* ECF No. 28-1 at 266. The Lessor Defendants offered no evidence that the parties mutually intended for the condemnation language of the termination clause to have any other effect. The Lessor Defendants also offered no viable theory to avoid enforcement of the termination clause.

Viewing the evidence in the light most favorable to Defendants, the Court finds that the Lessor Defendants have breached the terms of the Amended Lease Agreement by not giving effect to Plaintiff's valid exercise of its option to terminate, and the Amended Lease Agreement is terminated.

Accordingly, **IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 24**, is **GRANTED**. The Amended Lease Agreement is terminated.

2. Plaintiff is allowed sixty days, as necessary, from the date of this Order to cease operations and to arrange and accomplish an orderly vacation of the Premises in accordance with the terms of the Amended Lease Agreement.

3. Plaintiff shall pay rent and otherwise comply with applicable covenants and conditions of the Amended Lease Agreement during any period of continued occupancy of the Premises.

4. Plaintiff is awarded its costs and attorneys' fees, pursuant to Paragraph 20.2 of the Amended Lease Agreement, ECF No. 28-1 at 271, subject to filing a claim for attorneys' fees pursuant to Fed. R. Civ. P. 54(d).

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 1st day of August, 2011.

           *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
          Chief United States District Court Judge